NOT FOR PUBLICATION                                      [Docket No. 53]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SHIRLEY FREEMAN<br><br>           Plaintiff,<br><br>     v.<br><br>MIDDLE TOWNSHIP BOARD OF<br>EDUCATION, et al.,<br><br>           Defendants. | Civil Action No.<br>10-cv-6024 RMB/JS<br><br>**OPINION** |

Appearances:

David R. Castellani
Castellani Law Firm, LLC
450 Tilton Road, Suite 245
Northfield, New Jersey 08255
    Attorneys for Plaintiff

Timothy R. Bieg
Madden & Madden, P.A.
108 Kings Highway East – Suite 200
PO Box 210
Haddonfield, New Jersey 08033
    Attorneys for Defendants

**BUMB**, UNITED STATES DISTRICT JUDGE:

    Defendants Middle Township Board of Education ("MBE"),

Middle Township School District Superintendent Michael

Kopakowski ("Kopakowski"), and Middle Township School District

Business Administrator Walter Landgraf ("Landgraf")

(collectively the "Defendants"), have moved for summary judgment

on Plaintiff Shirley Freeman's ("Plaintiff") Second Amended

1

Complaint.  [Docket No. 28].  For the reasons that follow, the Defendants' Motion for Summary Judgment is GRANTED.

I. <u>Background</u>[1]

On May 19, 2009, Plaintiff was employed as a school bus driver by MBE.  While driving her morning bus route that day, Plaintiff was called into MBE's transportation office.  Def. Statement of Material Facts at ¶ 25.  After arriving at the transportation office, Plaintiff realized she had been called in for a random drug and alcohol screening.  <u>See</u> Pl. Dep. at 44:10-16.  Plaintiff had previously been tested on November 19, 2008 and March 25, 2009 for drugs and alcohol and had tested negative on both occasions.  <u>See</u> Ex. P [Docket No. 67].  Those screenings, and the May 19, 2009 screening, were performed in order to satisfy Department of Transportation ("DOT") regulations, which require such testing.[2]  <u>See</u> <u>e.g.</u>, 49 C.F.R. § 382.305(a)(requiring drivers to submit to random drug and

---

[1] All background facts are drawn from the affidavits and depositions submitted by the parties, as well as their Statements of Material Fact under Local Rule 56.1, with the facts construed in the light most favorable to Plaintiff, the nonmoving party. <u>See</u> <u>Kopec v. Tate</u>, 361 F.3d 772, 775 (3d Cir. 2004), <u>cert. den'd</u>, 543 U.S. 956 (2004).

[2] Plaintiff disputes that the May 19, 2009 test was federally mandated. The Plaintiff, however, has failed to point to any <u>evidence</u> to dispute evidence presented by Defendants that it was.  As such, this Court finds that this fact is undisputed for purposes of the Summary Judgment Motion.  <u>See</u> <u>Gurvey v. Fixzit Nat'l Install Servs., Inc.</u>, No. 06-1779, 2011 WL 550628 at *4 (D.N.J. Feb. 8, 2011)("If a party 'fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion . . . .'")(citing and quoting Fed. R. Civ. P. 56).

alcohol testing); see also Kraus Dep. at 73:4-10 (referring to the drug and alcohol screening as a DOT requirement). Plaintiff's May 19 test was overseen by Life Care Medical ("LCM"), a company MBE contracts with to perform drug and alcohol testing. Def. Statement of Material Facts at ¶ 7.

In accordance with DOT regulations, Plaintiff was asked upon arrival by Jean Kraus ("Ms. Kraus"), an LCM employee, to present her driver's license. See 49 C.F.R. §§ 40.61, 40.241; Def. Statement of Material Facts at ¶ 27. Plaintiff did not have her license on her person when she arrived at the transportation office and relayed this information to Ms. Kraus. Id. at ¶ 31; Pl. Dep. at 41:24-42:8. Because Plaintiff perceived her interaction with Ms. Kraus as "confrontational," she then spoke with Lisa Hulme ("Hulme"), MBE's Transportation Coordinator at the time, to find out "what [was] going on" and who was ordering the drug and alcohol screening. See Pl. Dep. at 42:3-8; 43:17-44:4. Plaintiff then went back to see Ms. Kraus and inquired what state agency was requesting the test. See Def. Statement of Material Facts at ¶ 53. Ms. Kraus then told Plaintiff that if she did not present her license and take the test, "she was going to make [Plaintiff] positive."[3] Pl. Dep.

---

[3] Defendants tell a different story about this encounter. Defendants assert they told Plaintiff that her refusal to test would merely have the same consequences as testing positive, which is an accurate description of what DOT regulations require. See Kraus Dep. at 71:24-72:4 ("I personally advised [Plaintiff] on two separate occasions that

at 47:24-48:15. LCM employees then offered to escort Plaintiff to her bus to retrieve her license. Def. Statement of Material Facts at ¶ 32. Plaintiff responded that her license was not on her bus. Id. Ms. Kraus again told Plaintiff she was "going to make a positive result." Def. Statement of Material Facts at ¶ 53. Plaintiff then told the LCM employees to "take [her] name off their list" and "proceeded out the door." Id. Plaintiff did not inform the LCM employees where she was going, or what she was doing, but it was apparently Plaintiff's intention to retrieve her license from a parking lot some distance away. See Pl. Dep. at 49:17-50:15. Plaintiff ultimately returned to the testing area approximately ten minutes later, but, by then, the LCM employees conducting the tests had already left and had marked Plaintiff as "refusing to test." See Pl. Dep. at 53:12-14; Kraus Dep. at 72:19-22.

After returning to the testing site, Plaintiff again spoke with Hulme and expressed concern, for the first time, that the screening would have been embarrassing because she was experiencing a heavy menstrual cycle, which would result in a discolored urine specimen viewable to other MBE employees. Id.

---

it's in her best interest to go ahead and get tested because, if she wasn't tested, we would have to record it as a refusal to test which carries the same employer requirements as a positive."); 49 C.F.R. §§ 40.191(c), 40.285 (describing that a refusal to test is a violation of the DOT regulations which triggers the same consequences as a positive test). However, because this Court must adopt the nonmoving party's version of the facts where facts are in dispute in assessing a summary judgment motion, it credits Plaintiff's version of the events. See Meyer v. Riegel Prods. Corp., 720 F.3d 303, 307 n.2 (3d Cir. 1983).

at ¶¶ 36-37. Hulme later contacted Landgraf to inform him that that the Plaintiff had refused to submit to the random drug and alcohol test. Id. at ¶ 48. As a result of Plaintiff's refusal, and in accordance with federal regulations which prohibited drivers who refuse such testing from continuing to drive, Plaintiff was suspended on May 22, 2009. See 49 C.F.R. ¶ 382.211 ("No driver shall refuse . . . a random alcohol or controlled substances test required under § 382.305 . . . . No employer shall permit a driver who refuses to submit to such tests to perform or continue to perform safety-sensitive functions."). The Defendants then asked Plaintiff to participate in a Substance Abuse Program ("SAP") and submit to new testing, as required by DOT regulations for drivers who refuse to test, so that Plaintiff could return to duty. See 49 C.F.R. §§ 40.285, 40.305(a) (requiring employees who violate DOT drug and alcohol regulations to complete an SAP evaluation and return-to-duty drug test before they can return to work and perform safety-sensitive functions). And, while Defendants hoped to have Plaintiff return to work, and repeatedly urged Plaintiff to submit to the SAP and new testing to enable her return, Plaintiff refused. Defendants' Motion for Summary Judgment at Ex. F (Letter from Defendant Kopakowski); Deposition Testimony of Defendant Kopakowski at 78 ("[W]e were trying to do everything in our power to get her to come back to work.");

5

Deposition Testimony of Plaintiff at 97 (acknowledging that Defendant Kopoakowski "implored" her to reconsider her refusal). This refusal ultimately led to Plaintiff's termination on or about June 18, 2009.

II. Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. at 248.

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corp., 720 F.3d 303, 307 n.2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. Further, a court does not have to adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 373, 380 (2007). In the face of such

6

evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide.'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989)(quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatte v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995); Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228

7

(3d Cir. 2009)("[S]peculation on conjecture may not defeat summary judgment.").

III. <u>Analysis</u>

Plaintiff's Second Amended Complaint, filed on May 17, 2011, asserts seven counts:

(1) Count 1 asserts a variety of claims under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et. seq. and 28 U.S.C. § 1983, inter alia, State and Federal Constitutional violations of privacy, equal protection, due process, and unreasonable search and seizure against MBE, Kopakowski, Landgraf and Hulme;

(2) Count 2 asserts two tortious violation of privacy claims: intrusion and false light against Kopakowski and MBE;

(3) Count 3 asserts claims for negligence/intentional misrepresentation/invasion of privacy/defamation against LCM and LCM employees Mary Jo Quigley and Leonard Krause;

(4) Count 4 asserts a claim for wrongful termination against Hulme, Landgraf, Kopakowski and MBE pursuant to <u>Pierce v. Ortho Pharm.</u>, 417 A.2d 505 (N.J. 1980);

(5) Count 5 asserts a claim for breach of implied contract against MBE;

(6) Count 6 asserts a claim under New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 et seq., against Landgraf and MBE; and

(7) Count 7 reasserts a state constitutional claim for due process violations as well as asserting common law causes of action such as defamation, slander, liable, and false light invasion of privacy.

[Docket No. 28]. Plaintiff's claims have since been winnowed down by: (1) Plaintiff's stipulation to the dismissal of Defendants LCM, Leonard Kraus, Mary Jo Quigley, and Lisa Hulme,

which eliminates Count 3, which was asserted solely against LCM, Quigley, and Leonard Krause [Docket No. 64, 69]; and (2) Plaintiff's abandonment of claims during the summary judgment briefing. With respect to the latter, Plaintiff's thirteen-page summary judgment opposition brief only advanced arguments in support of Plaintiff's: (1) unreasonable search and seizure; (2) constitutional privacy; and (3) <u>Pierce</u> claims. As such, the Court considers the other claims to be waived.[4]  See Resolution

---

[4]  In any event, Plaintiff's abandoned claims appear to have no merit. Plaintiff's procedural due process claim [Count 1] fails because Plaintiff: (1) received sufficient notice as to the effective consequences of her actions, even if phrased erroneously; (2) understood and complied with identical procedures in the past; (3) was afforded a post-deprivation opportunity to cure which entailed a de minimis burden; and (4) failed to prove she availed herself of the grievance procedure set forth in the contract between MBE and the union. <u>See</u> e.g., <u>DeLuzio v. Monroe Cnty.</u>, 271 F. App'x 193, 197 (3d Cir. 2008)("The essential requirements of due process entitle a public employee to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.")(internal quotation marks and citation omitted); <u>Alvin v. Suzuki</u>, 227 F.3d 107, 116 (3d Cir. 2000)("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate."); <u>Zilich v. Lucht</u>, 981 F.2d 694, 696 (3d. Cir. 1992)("[T]he Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property, provided that the state makes available a meaningful post-deprivation remedy."). Plaintiff's due process claim for deprivation of her liberty interest in her reputation [Counts 1 and 7] fails because she has presented no evidence that Defendants disseminated "a false and defamatory impression" about her termination. <u>See</u> <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 236 (3d Cir. 2006)(requiring a plaintiff to prove an employer created and disseminated "a false and defamatory impression about the employee in connection with his termination" to make out a due process claim for deprivation of a liberty interest in reputation). Plaintiff was terminated for her refusal to submit to a drug and alcohol test and her subsequent refusal to participate in a SAP. Plaintiff has not presented evidence that Defendants have disseminated a separate false ground for her termination. <u>Id.</u> Plaintiff's equal protection [Count 1] claim is deficient because she has not produced any evidence to prove that Defendants treated a similarly situated individual differently or that their actions were motivated by a discriminatory

Trust Corp. v. Dunamr Corp., 43 F.3d 587, 599 (11th Cir. 1995)("In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him. . . . [T]he onus is upon the parties to formulate arguments; grounds alleged in the compliant but not relied upon in summary judgment are deemed abandoned.")(internal quotation marks and citation omitted).[5]  The Court analyzes the remaining claims in turn.

---

purpose.  See Ryan v. Scism, No. 11-4635, 2012 WL 1111323, at *3 (3d Cir. Apr. 4, 2012)(requiring a plaintiff prove "he received different treatment from that received by other individuals similarly situated and that [the defendant] acted with discriminatory purpose"). Plaintiff's NJLAD claim [Count 6] similarly fails because Plaintiff has not provided sufficient evidence that her adverse employment action occurred "under circumstances that give rise to an inference of discrimination."  See Campbell v. Supreme Court of N.J., No. 11-555, 2012 WL 1033308, at *17 (D.N.J. Mar. 27, 2012)(requiring a plaintiff to prove a prime facie case of discrimination, which entails proving that the adverse employment action occurred under circumstances giving rise to an inference of discrimination, to make out a NJLAD claim). Plaintiff has provided no detail as to the basis of her First Amendment claim [Count 1], which therefore fails.  Plaintiff's false light claim [Counts 2 and 7] fails because Plaintiff has not presented evidence that Defendants: (1) made any false statements; or (2) disclosed any sensitive or defamatory information to the public.  See Romaine v. Kallinger, 537 A.2d 284, 294 (N.J. 1988)(requiring that a statement be both false and publicized to constitute an actionable false light claim).  Plaintiff's intrusion claim [Count 1] fails because Defendants' allegedly intrusive actions – namely requiring Plaintiff to complete a SAP – would not have been highly offensive to a reasonable person.  See Hennessey v. Coastal Eagle Point Oil Co., 609 A.2d 11, 17 (N.J. 1992)(holding the tort of intrusion on seclusion actionable only if the intrusion would be highly offensive to a reasonable person).  Finally, Plaintiff has failed to cite to any legal authority that would support her breach of implied contract claim [Count 5] that MBE's drug and alcohol testing policy created an implied contract between the parties, or facts that would support a finding that the MBE breached that contract.

[5]  See also Bowen v. Cnty. of Westchester, 706 F. Supp. 2d 475, 492 (S.D.N.Y. 2010)(considering a claim waived because the plaintiff did not respond in their opposition brief to defendant's arguments that plaintiff's claim was without merit); Aurelio v. Bd. of Ed. of the Borough of Carteret, No. 06-3146, 2009 WL 1794800, at*6 (June 23, 2009 D.N.J.)("Plaintiff fails to address this issue in his opposition brief, and thus the Court grants summary judgment on that argument."); Ankele v. Hambrick, 286 F. Supp. 2d 485,  496 (E.D. Pa. 2003)(granting

10

    A.    Plaintiff's Claims Under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A. 10:6-2

In Count 1 of the Second Amended Complaint, Plaintiff asserts, pursuant to § 1983 and the New Jersey Civil Rights Act, that Defendants violated her constitutional rights, under the Fourth Amendment of the Federal Constitution and Article 1, paragraph 7 of the New Jersey State Constitution, to be free from unreasonable search and seizure.

To prevail under either § 1983 or the New Jersey Civil Rights Act, Plaintiff must show that a person acting under color of state law deprived her of a right secured by the federal or state constitution. See Mollo v. Passaic Valley Sewerage Com'rs, 406 F. App'x 664, 667-68 (3d Cir. 2011); see also Hove v. Cleary, No. 10-1876, 2011 WL 2223760, at *4 (D.N.J. June 6, 2011)("The analysis of constitutional violations under the New Jersey Civil Rights Act tracks the analysis of a § 1983 claim."). It is undisputed that MBE, Kopakowski, and Landgraf were acting under the color of state law. Therefore, the validity of Plaintiff's claim turns on whether Defendants have deprived her of right to be free from unreasonable search as claimed.

To demonstrate that a deprivation of this right occurred, Plaintiff must show both that: (1) a search occurred; and (2) that it was unreasonable. See Lease v. Fishel, No. 1:07-CV-0003,

---

    defendant's summary judgment motion on a specific claim since "Plaintiff [made] no response to [defendant's] argument, and thus . . . waived his opportunity to contest it").

11

2011 WL 381656, at *3 (M.D. Pa. Jan. 28, 2011)(requiring that a search or seizure within the meaning of the Fourth Amendment occur, and that the search or seizure be unreasonable, before a Fourth Amendment violation is found)(citing Brower v. Cnty. of Inyo, 489 U.S. 593, 599-600 (1989)).  The first requirement is easily met.  While Plaintiff ultimately did not submit to the drug and alcohol screening, the mere requirement of that test constitutes a search because Plaintiff's continued employment depended upon her submission to the test.  See Everett v. Napper, 833 F.3d 1507, 1511 (11th Cir. 1987)("Because [plaintiff's] continued employment was contingent upon his subjection to a search, we must determine whether the search offended the Fourth Amendment."); Egloff v. New Jersey Air Nat. Guard, 684 F. Supp. 1275, 1279 n.2 (D.N.J. 1988)(rejecting the notion that because plaintiff "refused to take a urinalysis and no 'search' actually occurred, there can be no violation of the Fourth Amendment"); see also Mollo v. Passaic Valley Sewerage Com'rs, No. 07-1655, 2009 WL 5216976, at *8(D.N.J. Dec. 30, 2009)("It is well established that the government's collection and testing of an employee's urine constitutes a search under the Fourth Amendment and Paragraph 7."), aff'd, 406 F. App'x 664 (3d Cir. 2011).

    In assessing the second requirement, the reasonableness of a random drug testing program under both the Fourth Amendment and Paragraph 7 is assessed using the "special needs test."  See

Mollo 406 F. App'x at 669 ("While the New Jersey Constitution has been interpreted as providing greater protection than the Fourth Amendment in some respects, the Supreme Court of New Jersey has applied the matrix of rules derived from Skinner and Von Raab to allow suspicion less drug testing of public employees upon a showing of a diminished expectation of privacy, adequate limitations on the testing's intrusiveness, and a compelling government interest in the employees' safe conduct."); N.J. Transit PBA Local 304 v. N.J. Transit Corp., 701 A.2d 1243, 1255 (N.J. 1997)("We find that the special needs test provides a useful analytical framework for considering the protections afforded by . . . Paragraph 7 . . . .").

Under that test, "the constitutionality of a particular search is judged by balancing its intrusion on the individuals [privacy] interests against its promotion of legitimate governmental interests beyond that of typical law enforcement." Neumeyer v. Beard, 421 F.3d 210, 214 (3d Cir. 2005). Generally, in balancing these interests, courts have recognized the "compelling" interest in requiring drug testing of those who "discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences." See Skinner v. Ry. Labor Execs.' Ass'n, 489 U.S. 603, 629 (1989). And courts have specifically recognized a "heightened governmental interest in performing drug tests on

13

school employees that are responsible for the safety of school children" like the Plaintiff.  Hove, 2011 WL 2223760, at *5.  Importantly, a failure to abide by administrative regulations does not necessarily equate to a constitutional violation.  See Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993)(citation omitted).  Rarely will a violation of the drug testing regulations lead to a cognizable constitutional claim.  See Drake v. Lab. Corp. of Am. Holdings, 290 F. Supp. 2d 353, 375 (E.D.N.Y. 2003), aff'd, 458 F.3d 48 (2d Cir. 2006).

Plaintiff claims that the testing was unreasonable because the administration of the test was in violation of MBE's own drug testing policy and Parts 40 and 382 of Title 49 of the C.F.R, which governs drug and alcohol screening.  Plaintiff specifically alleges five violations:

> (1) failure to test 50% of all drivers as mandated by 49 C.F.R. § 382.305(b)(2);
>
> (2) failure to name a designated employee representative ("DER") responsible for answering driver questions about the drug testing program as mandated by 49 C.F.R. § 382.601(b)(1);
>
> (3) failure to maintain appropriate licenses and permits for the testing site as mandated by MBE Policy 4219;
>
> (4) failure to provide sufficient educational materials as mandated by § 382.601(a); and
>
> (5) failure to obtain signed copies of a statement certifying all drivers received the educational

materials as mandated by § 382.601(d).[6] Defendant denies the existence of the above violations, but to the extent they exist, also denies that the violations rise to the level of constitutional violations. The Court agrees with Defendants for two reasons.

First, none of these violations, even if true, in any way weaken the government's compelling interest in requiring school bus drivers to submit to random drug and alcohol tests. Second, these violations, if true, do not meaningfully affect the intrusiveness of Plaintiff's test since they relate to: (1) a failure to test other drivers; (2) a failure to name a designated employee representative, which had no practical impact on the Plaintiff's ability to have questions addressed on the site, given her questioning of Ms. Hulme; (3) a lack of proper licenses and permits that has no import on the intrusiveness of the procedure used; and (4) a failure to provide educational materials, or collect signed copies of those materials, which appeared to have no impact on Plaintiff, as Plaintiff acknowledged that she "might have received" the relevant policy and had been through the procedure before and "knew how it had been done." See Pl. Dep. at 31:13-16, 45:11-12.

---

[6] Plaintiff also previously claimed that Landgraf intentionally placed her name on the May 19 list. See Second Am. Compl., Count 1 at ¶ 18. Plaintiff subsequently withdrew that claim. See Pl. Counterstatement of Material Facts at ¶ 10 [Docket No.59].

Accordingly, this is not one of those rare times when regulatory violations render a drug test unconstitutional.

  B. <u>Privacy Claims</u>

Plaintiff also asserts violations with respect to her federal constitutional right to privacy and her right to privacy under Article 1, paragraphs 1 and 7 of the New Jersey Constitution. With respect to the former, "because the Fourth Amendment supplies an explicit textual source of constitutional protection against unlawful searches, that Amendment, and not the more general right to privacy, governs the constitutionality of the search." <u>Ramirez v. Butte-Silver Bout Cnty.</u>, 298 F.3d 1022, 1029 (9th Cir. 2002); <u>see</u> <u>also</u> <u>Dubbs v. Head Start, Inc.</u>, 336 F.3d 1194, 1203 (10th Cir. 2003)(explaining that privacy concerns implicated by physical searches can be "fully [] vindicated" by a Fourth Amendment analysis); <u>DeLauri v. N.J. Div. of State Police</u>, No. 05-4165, 2009 WL 222983, at *4 (D.N.J. 2009)(analyzing a constitutional invasion of privacy claim under the Fourth Amendment). Because this Court has already concluded that no Fourth Amendment violation occurred, this claim fails.

With respect to the latter, under New Jersey Law, privacy concerns arising out of governmental searches, including urine testing, similarly do not implicate any additional privacy right beyond the rights guaranteed by Section 1, paragraph 7. <u>See</u> <u>Joye v. Hunterdon Cent. Reg'l High School Bd. of Educ.</u>, 826 A.2d

16

624, 650 (N.J. 2003)(stating New Jersey law reserves "exclusively to Article I, paragraph 7 any question implicating one's privacy interest in connection with a governmental search, including compelled collection of one's bodily fluids"). Because this Court has already concluded there has been no violation of Paragraph 7, this claim is also dismissed.

    C.    <u>Pierce Claim for Wrongful Termination</u>

In Count 4 of Plaintiff's Second Amended Complaint, Plaintiff claims that her termination for refusing to submit to the drug and alcohol test or complete a SAP constituted a wrongful termination because it violated a clear mandate of public policy pursuant to <u>Pierce v. Ortho Pharm.</u>, 417 A.2d 505 (N.J. 1980). Specifically, Plaintiff claims that there is a clear public policy mandate that Defendants follow applicable regulations and policies.  (Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment at 9, "It is plaintiff's position that the Middle Township Board of Education's failure to follow the mandates of the Code of Federal Regulations and by violating its own policy regarding random drug testing it has violated a clear mandate of public policy sufficient to prove a cause of action for a common law wrongful termination under <u>Pierce</u>.").

A <u>Pierce</u> claim requires that the Plaintiff demonstrate that she expressed disagreement with a policy, directive, or decision

17

based on a clear mandate of public policy and a causal connection between that expression and her termination. Badrinauth v. MetLife Corp., 368 F. App'x 320, 323-24 (3d Cir. 2010); Brangan v. Ball Plastic Container Corp., No. 11-5470, 2012 WL 1332663, at *7-8 (D.N.J. April 18, 2012); Barnello v. AGC Chems. Americas, Inc., No. 08-3505, 2009 WL 234142, at *7 (D.N.J. Jan. 29, 2009); Tartaglia v. UBS Painwebber Inc., 961 A2d 1167, 1183 (N.J. 2008)(requiring both that the employee voice disagreement and that the disagreement concern a violation of a mandate of public policy); Hennessey v. Coastal Eagle Point Oil Co., 609 A.2d 11, 16 (N.J. 1992).  But Plaintiff has failed to present any evidence that she voiced disagreement concerning Defendants' purported failure to follow applicable regulations and policies, as required.  And, even if Plaintiff had presented such evidence, she has failed to present any evidence of a causal connection between that expression and her termination. In fact, Defendants repeatedly urged her to submit to the required SAP and drug and alcohol testing in the hopes that she could return to her position, and only terminated her when she refused to submit to the SAP and testing.  Therefore, Defendants Motion for Summary Judgment on Plaintiff's Pierce claim is granted.

IV.  Conclusion

For all these reasons, Defendants' Motion for Summary Judgment is GRANTED.

s/Renée Marie Bumb<br>
RENÉE MARIE BUMB<br>
UNITED STATES DISTRICT JUDGE

Dated: August 27, 2012